IN RE QUANITRA M. ET AL.*
(AC 19790)

Lavery, C. J., and Mihalakos and Pellegrino, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued May 30—officially released September 26, 2000

*Arnold V. Amore II*, for the appellant (respondent mother).

*Mary K. Lenehan*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Stephen P. Hanchuruck*, for the minor children.

*Opinion*

MIHALAKOS, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights with respect to three of her four minor children.[1] On appeal, the respondent claims that the court improperly (1) determined that the petitioner, the commissioner of children and families (commissioner), need not, in the dispositional phase of a termination proceed-

---

[1] The parental rights of each of the children's fathers also were terminated. Only the respondent mother has appealed, and we refer to her in this opinion as the respondent.

ing, prove by clear and convincing evidence the seven factors set forth in General Statutes (Rev. to 1997) § 17a-112 (e), now (d),[2] prior to a finding by the court that it is in the best interests of the children to have the respondent's parental rights terminated and (2) found that there was sufficient evidence to terminate her parental rights in the dispositional phase after determining that the seven factors set forth in § 17a-112 (e) are merely guidelines that need not be proven by clear and convincing evidence. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to the disposition of this appeal. On May 14, 1994, the New Haven police department contacted the department of children and families (department) to report

---

[2] General Statutes (Rev. to 1997) § 17a-112 (e), now (d), provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

that the respondent, an individual with a substance abuse problem and a criminal record,[3] had left her children with a caretaker on May 12, 1994, and failed to return for them. On May 14, 1994, the commissioner instituted a ninety-six hour hold on the children and placed them in foster homes. On May 18, 1994, the commissioner filed petitions in New Haven Juvenile Court, alleging neglect as to all four children. Orders for temporary custody were obtained on May 29, 1994. On August 3, 1994, the four children were committed to the commissioner as neglected, and a dispositional order was entered committing them to the custody of the commissioner for an eighteen month period.[4] On August 12, 1994, a hearing took place, but the respondent, whose whereabouts were unknown on the date of the hearing, did not appear and the court did not order expectations. On January 13, 1995, the respondent attended an administrative case review (review) with the department's social workers. At the review, the respondent received a copy of a treatment plan outlining the steps that she needed to take to help secure the return of her children. The steps included (1) keeping appointments with the department, (2) keeping the department apprised of her whereabouts, (3) remaining drug free and (4) securing an apartment. The only expectation that the respondent complied with was the securing of an apartment.

Between July, 1995, and February, 1996, a department social worker made seven appointments for substance abuse evaluations with the respondent, which she failed

---

[3] On January 14, 1995, the respondent was arrested on charges that included burglary and failure to appear. On April 20, 1995, she was arrested on charges of assault. In November, 1995, she was arrested and extradited to North Carolina in connection with violation of parole. On May 3, 1998, the respondent was arrested and incarcerated on charges that included burglary, risk of injury and reckless endangerment.

[4] These commitments were subsequently extended on January 16, 1996, August 20, 1997, and August 14, 1998.

to attend. On October 31, 1995, the respondent tested positive for cocaine after undergoing a substance abuse evaluation at Connecticut Mental Health Center's substance abuse treatment unit. At that time, it was recommended that the respondent pursue outpatient substance abuse treatment, which she failed to do.

On February 21, 1996, the respondent underwent another substance abuse evaluation. At that time, it was determined that she had abused cannabis and cocaine, and that she exhibited antisocial personality traits. It was recommended that the respondent attend a substance treatment program, which, once again, she did not pursue. From February 21, 1996, until March 26, 1997, the respondent failed to attend several substance treatment evaluations. On March 26, 1997, the respondent was seen at the APT Foundation central treatment unit of New Haven for substance abuse evaluation, where it was determined that she had abused cocaine. On April 1, 1997, she was given an appointment for admission, but her case was closed on April 26, 1997, for failure to attend.

On August 29, 1997, the respondent entered an inpatient treatment program at Connecticut Valley Hospital (hospital) and was released on October 10, 1997, after completing a forty-five day program. Following her release, the hospital recommended that she participate in Multicultural Ambulatory Addiction Services (services), an outpatient treatment program. The respondent, however, failed to follow through with those services.

On May 11, 1998, pursuant to General Statutes (Rev. to 1997) § 17a-112 (c),[5] the commissioner filed termina-

---

[5] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a [termination] petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) that termination is in the best interest of the child, and (3) . . .

tion of parental rights petitions with regard to the three youngest children, the respondent's son and two of her daughters. The petitions alleged that all three children had been abandoned by the respondent and that she had failed to achieve sufficient personal rehabilitation as would encourage the belief that within a reasonable time, considering the children's ages and needs, she could assume a responsible position in their lives. The petitions as to two of the children recited that they had been denied the care, guidance or control necessary to their physical, educational or moral well-being. The petition as to the third child alleged that there was no ongoing parent-child relationship.

On April 15, 1998, weekly visitation of the respondent's four children was ordered by the department. The respondent, however, rarely took advantage of the visits arranged by the department, and her infrequent visits with her children proved to be ineffective. Bruce Freedman, a licensed psychologist, observed the respondent interact with the three youngest children and described her behavior during the visits as inappropriate. Freedman subsequently conducted a psychological evaluation of the children and the respondent, examining the issue of reunification and the best interests of the children. Freedman testified that the respondent had not addressed her substance abuse problem and that she was at high risk for a relapse. He testified that she had psychological problems, such as impulse control, which the respondent had failed to acknowl-

(A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

edge and address. He concluded that reunification with her children would not be appropriate at that time.

On December 29, 1998, and on January 5, February 3, April 7 and April 26, 1999, termination proceedings were held. On April 26, 1999, in an oral ruling from the bench, the court terminated the respondent's parental rights, finding by clear and convincing evidence that she had failed to achieve sufficient personal rehabilitation as would encourage the belief that within a reasonable time, considering the children's ages and needs, she could assume a responsible position in their lives. This appeal followed.

I

The respondent first claims that the court improperly determined that the commissioner, in the dispositional phase, need not prove by clear and convincing evidence the seven factors set forth in § 17a-112 (e) prior to a finding by the court that it is in the best interests of the children to have the respondent's parental rights terminated. We disagree.

"Under § 17a-112, a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the four grounds for termination of parental rights set forth in § 17a-112 (b) exists by clear and convincing evidence. The commissioner . . . in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds. In contrast to custody proceedings, in which the best interests of the child are always the paramount consideration and in fact usually dictate the outcome, in termination proceedings the statutory criteria must be met before termination can be accomplished and adoption proceedings begun. . . . Section [17a-112 (b)] carefully sets out . . . [the] situations that, in the judgment of the legisla-

ture, constitute countervailing interests sufficiently powerful to justify the termination of parental rights in the absence of consent. . . . One of the four predicates for the termination of parental rights under § 17a-112 (b) covers the situation in which, over an extended period of time, the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . . General Statutes § 17a-112 (b) (2).

"If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child. When the petitions in this case were filed, [General Statutes (Rev. to 1997) § 17a-112 (e)] required that the trial court, in determining whether to terminate parental rights, consider and . . . make written findings regarding seven separate factors . . . ." (Citations omitted; internal quotation marks omitted.) *In re Eden F.*, 250 Conn. 674, 688–89, 741 A.2d 873 (1999).

Whether the commissioner is required to prove by clear and convincing evidence the seven factors set forth in § 17a-112 (e) prior to the court's finding that it is in the best interests of the children to have the respondent's parental rights terminated "is a matter of statutory interpretation, which is a matter of law, requiring plenary review. . . . In interpreting statutes, our analysis is guided by well established principles of statutory construction. [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legisla-

tive history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id., 690.

The seven factors set forth in § 17a-112 (e) serve simply as guidelines to the court and are not statutory prerequisites that need to be proven before termination can be ordered. See *In re Christine F.*, 6 Conn. App. 360, 369, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). General Statutes § 17a-112 (e) provides in relevant part that "in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding" those seven factors. As a result, there is no requirement that each factor be proven by clear and convincing evidence.

In *In re Eden F.*, supra, 250 Conn. 690–91, our Supreme Court held that "pursuant to § 17a-112 (b), the trial court was authorized to terminate parental rights upon a showing, by clear and convincing evidence, first, that one or more of the four scenarios set forth in § 17a-112 (b) had been proven, and second, that the termination of parental rights was in the best interest of the child. Although § 17a-112 (d) (1) and (2) [formerly § 17-112 (e) (1) and (2)] mandated that the trial court make written findings regarding the timeliness, nature, extent and reasonableness of the efforts made to reunify parent and child, § 17a-112 contained nothing to indicate that any such finding was a prerequisite to the termination of parental rights. Thus, when the petitions in this case were filed, the factors to be considered under § 17a-112 (d) [formerly § 17a-112 (e)] served only to guide the trial court in making its ultimate decision whether to grant the termination petition. . . . Thus, the fact that the legislature [had interpolated] objective

guidelines into the open-ended fact-oriented statutes which govern [parental termination] disputes . . . should not be construed as a predetermined weighing of evidence . . . by the legislature. Where . . . the record reveals that the trial court's ultimate conclusions [regarding termination of parental rights] are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any one segment of the many factors considered in a termination proceeding . . . ." (Citations omitted; internal quotation marks omitted.) The court thus properly determined that the commissioner, in the dispositional phase, need not prove by clear and convincing evidence the seven factors set forth in § 17a-112 (e) prior to a finding by the court that it is in the best interests of the children to have the respondent's parental rights terminated.

## II

The respondent's next claim is that the court's finding that there was sufficient evidence to terminate her parental rights in the dispositional phase was improper in light of that court's determination that the seven factors set forth in § 17a-112 (e) are merely guidelines that need not be proven by clear and convincing evidence. The respondent claims that the court should not have determined that there was sufficient evidence to support its conclusion that termination was in the best interests of the children in view of evidence that two of the children, the two girls, had bonded with her. In effect, she claims that there is an inconsistency in the court's reasoning such that the order of termination was improper because there was evidence of bonding. We do not agree.

"Our role in reviewing an appeal based on the sufficiency of the evidence is well defined. Where the claim is that the evidence produced did not satisfy the burden of proof factually, the duty of an appellate court is

well established. An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law. . . . The probative force of conflicting evidence is for the trier to determine." (Citations omitted; internal quotation marks omitted.) *Jones* v. *Ippoliti*, 52 Conn. App. 199, 206–207, 727 A.2d 713 (1999). "[W]e must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the [court's] verdict . . . ." (Citation omitted; internal quotation marks omitted.) *Gilbert* v. *Middlesex Hospital*, 58 Conn. App. 731, 736, 755 A.2d 903 (2000).

In this case, the respondent alludes to expert testimony from Freedman, a licensed psychologist, and from Christine Smith, a licensed clinical social worker, who had been treating two of the respondent's daughters for the past few years. Both experts acknowledged that bonds exist between the respondent and the two girls. Despite the finding of bonding, both experts concluded that bonding was not a sufficient reason to find that termination was not in the best interests of the children.

In *In re Christine F.*, supra, 6 Conn. App. 369, this court considered the factors set forth in General Statutes § 17-43a (d), the predecessor to § 17-112 (e), and also found that a loving relationship existed between the mother and child. In that case, the mother argued that the evidence of this loving relationship had not been given proper weight and should have precluded a finding that termination was in the child's best interest. Id. We went on to state that "[w]here, as here, the

record reveals that the trial court's ultimate conclusions are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any one segment of the many factors considered in a termination proceeding . . . ." (Internal quotation marks omitted.) Id., 369–70.

Here, the court's ultimate conclusion was supported by sufficient evidence. Freedman concluded that termination was in the best interests of the children, given their need for permanency and stability. Freedman described the relationship between the respondent and her children as an unhealthy one in which the children had to take care of the respondent due to her serious substance abuse problems. Additionally, both experts agreed that the best situation for the children would be for them to be placed in a secure, stable and permanent home with limited, supervised, monitored visitation and contact with the respondent. Finally, there was evidence showing that the respondent had left her children with a caretaker without returning for them, and that she repeatedly missed visitation with her children and went as long as five months between visits. We therefore conclude that there was sufficient evidence for the court to terminate the parental rights of the respondent.

The judgments are affirmed.

In this opinion the other judges concurred.