[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 1. INTRODUCTION
A coterminous petition was filed by the Department of Children and Families on March 27, 2001 wherein the Department sought to terminate the parental rights of Stephanie D. who is the mother and Rodney H. who is the father of Justin H. who was born on March 2001 and who is now nineteen months old.
On the date set for trial, October 29, 2002, mother executed an affidavit in triplicate consenting to the termination of her parental rights after a full canvass was performed by this court which found that mothers consent was knowingly and voluntarily made with the assistance of competent counsel and with a full understanding of the legal consequences and which thereafter accepted mother's consent. The court deferred a finding that termination of parental rights with regard to mother is in the best interest of this child pending a decision as to father's parental rights.
 II. HISTORY OF PROCEEDINGS
Prior to the instant coterminous petition, there were previous proceedings with the department relative to five other children of mother, all due to years of substance abuse by mother. As a result of those proccedings, all five of those children were removed from mother's care and are permanently with other caretakers, including the youngest, relative to which mother's parental rights were terminated. Mother's drug abuse and domestic violence issues dated back to 1994.
The present petitions were tiled six days after Justin's birth and while the child, who was born cocaine positive with withdrawal symptoms, was still hospitalized. Mother admitted use of cocaine just three days prior to this full term child's birth and one time per month for the last three months of her pregnancy. CT Page 14075
The department alleged that Justin was a neglected child in that he was being denied proper care and attention physically, emotionally or morally and that he was being permitted to live under conditions, circumstances or associations injurious to his well-being and that he was uncared for in that his home could not provide for his special needs — all as provided in General Statutes Section 46b-120 (9). The termination petition, as to father, alleged that he had abandoned Justin as that term is defined in General Statutes Section 17a-112 (j)(3)(A). As to mother, the initial petition was brought under ground (E) of the cited statute which implicated a previous termination as to another child, however, petitioner amended that petition by substituting ground (B)(2) which is based on a parent's failure to rehabilitate. On the date that the coterminous petitions were filed the court (Dennis, J.) issued an order of temporary custody vesting Justin's custody in the department, which was sustained on April 2, 2001. The petitions and the custody order were prompted not only by mother's loss of five children, but also by a five year history with the department during which mother participated in fifteen substance abuse programs, both inpatient and outpatient.
On April 23, 2001, the court (Resha, J.) defaulted father for his failure to appear and found that he had been appropriately served by publication. A priority placement study was ordered by the department's counterpart in North Carolina to evaluate mother's cousin as a possible custodial source. The study was ordered in August 2001 and, as a result, Justin was placed with the maternal cousin in December of that year. This matter was originally set down for trial to commence in this court on September 30, 2002, however no party was prepared to proceed as the North Carolina placement disrupted only three days previous thereto. The case was subsequently assigned an October 29, 2002 trial date.
 III. ADJUDICATION
As indicated, mother consented to the termination of her parental rights on October 29, 2002; this court ordered the petitioner to file a written amendment to that effect.
Father was well aware that the trial would commence October 99 p002 and conclude on October 31, 2002. He was initially defaulted for his failure to appear on the plea date set for the coterminous petitions on April 23, 2001 by Judge Resha.
However, he did appear on several occasions with his court-appointed attorney and did appear according to the file on June 5, 2002 at a pretrial conference and on August 23, 2002 at a Romance hearing.[1]
CT Page 14076
Father also appeared on September 30 — the date of the originally scheduled trial and was personally made aware of the October 29th trial date by his attorney. Father did not respond to his attorneys attempts (by telephone and by letter) to reach him prior to trial. The default entered by J. Resha, therefore stands — aggravated by father's failure to appear for trial.
This court has reviewed all of the exhibits, (5) in number, submitted by agreement of counsel including the case workers affidavit dated March 27, 2001, which triggered the order of temporary custody of the same date: the department social study and update, and father's extensive record of criminal offenses and incarcerations.
The court considered the testimony of Mr. Barrett and has read the summary of facts accompanying the coterminous petitions. The court finds by default in non-appearance for plea and trial and from its review of the evidence that the petitioner has proven by clear and convincing evidence the statutory grounds alleged against father, that is, the abandonment, within the meaning of section 17a-112 (j)(3)(A), of his son, Justin. The court finds that the petitioner has proven by clear and convincing evidence the statutory ground of consent as to mother, as provided in section 17a-112 (i) Connecticut General Statutes.
 IV. REASONABLE EFFORTS
Pursuant to section 17a-112 (j)(1), the court finds that the petitioner has made successful efforts to locate mother and father. Each parent was furnished with a court-appointed attorney. And each, more or less, participated in the proceedings prior to the October 29, 2002 trial date.
The fact that father was not located by the department until some fourteen months after his child was placed with the department is no one's fault but his own. Testimony was that father visited his son two days after birth and was not heard from until May, 2002 when a search inquiry discovered father's whereabouts at a correctional institution in Montville.
As to mother, this court finds that her extensive history of substance abuse, failed remedial programs and loss of her children amply demonstrates that she is unwilling and certainly unable to benefit from the many services offered by the department in the past or from any possible services that might be so offered in the future. The court makes this finding by clear and convincing evidence. CT Page 14077
As to father, this court finds that he has by his own lack of interest in the welfare of his child demonstrated to this court by clear and convincing evidence that he is unable and unwilling to benefit from any services that might be offered by the department purposed to create a connection with his child. The court employs the word "create" because father never sought to have any meaningful relationship with his child. Father failed to take advantage of the most basic parent to child service which the department has to offer, ie, visitation. In May, 2002, father was asked to call the previous caseworker to arrange for visitation and he failed to do so. Since birth father has seen Justin on two occasions . . . that visit when the child was two days old and an unauthorized visit in July 2002 when the child was returned from North Carolina. Now father has failed to appear at a trial in which his parental rights were at great risk of being lost.
 IV. DISPOSITION
Basic Facts Pertaining To The Determination of Best Interest
Father has never been in any position to be anything close to a custodial source for his son. Since 1985 father has been incarcerated on eight separate occasions for such crimes as attempted robbery, possession of narcotics, larceny, and assault in the first degree. His most recent conviction was for the assault on an elderly person for which he received the minimum mandatory one year sentence. That was on June 1, 2001, when his son was nearly three months old. As of the date of the conterminous petition, father had made no attempts to contact the department in order to seek visitation or to inquire as to his son's welfare. Father has not paid a penny in support of his child and has not provided one material item for the use or benefit of his child. He not only is lacking of any parent to child bond with Justin, he is totally lacking of any relationship whatsoever with this child. While this case was pending father even challenged unsuccessfully his paternity of this child. The positive paternity ratio, according to the father-requested, court-ordered DNA test was 60.724:1! Father now, through counsel, offers himself as a visitation source for a child he does not know and does not support.
Due to her extensive history of drug abuse, mother has not been able to provide care for any of her six children, including Justin. Mother is now age 33 and has been abusing drugs since she was 18. From 1994 to the date of the present petition, she has been involved in numerous substance abuse programs, all to no avail. Mother has failed to recognize the disastrous impact her substance abuse has had on her parenting abilities and as of the date of the present petition admitted to continuing drug use. CT Page 14078
 V. BEST INTEREST
As noted father was defaulted for his failure to appear on the plea date set for both the neglect/uncared for petition and the termination petition. Mother has consented to the termination of her parental rights which obviates the necessity of addressing the allegations in the neglect/uncared for petition.
Even though father has been defaulted for his failure to appear at plea and at trial on the adjudication portion of the trial, it nevertheless remains the petitioner's burden to prove that termination of father's parental rights is in the child's best interest. And that must be proven by clear and convincing evidence.
Even though mother has consented, the petitioner must also prove that the termination of mother's parental rights to this child is in Justin's best interest and that proof must be by clear and convincing evidence.
Pursuant to Practice Book section 33-3, the court may consider events prior to the filing of the termination of parental rights petitions and all events up to and including trial in the disposition stage of the trial.
Pursuant to Section 17a-112 (k), in making a nonconsensual determination as to whether terminating a parent's parental rights is in a child's best interest, the court must consider and make written findings relative to the seven factors set forth in said statute.
Said factors serve as guidelines to the court's determination of best interest. In re Quanitra M., 60 Conn. App. 96, 104, cert. denied,255 Conn. 903 (2000). In making it's determination, the court has reviewed all of the exhibits offered by petitioner and father and has considered the testimony of the current caseworker. Mr. Barrett.
Other than six days of hospital care, when, at least some of that time, mother was in the same building as her child, neither mother nor father have provided any care for Justin. He was in foster care with Pam H. from March 27, 2001 to December, 2001 when he was, with court approval, placed with mother's cousin in North Carolina. Unfortunately, that placement disrupted and Justin was returned to Connecticut on October 4, 2002 and placed with a temporary foster family, different than that of his first placement. Pam H., however, wishes to make Justin a permanent part of her family, with her husband and two biological children and is and has applied to the department for approval as an adoptive CT Page 14079 source. The department supports the adoption of Justin by Pam H. and anticipates the necessary approval within two weeks at which time the child will be placed pre-adoptively with Pam and her family. Justin, in addition to his infancy, is a child with special needs as he suffers from asthma and is delayed in his speech. He will soon be receiving Birth To Three services similar to those received in North Carolina. This young child is entitled to a secure, safe, stable, permanent home without further delay.
The minimal obligations of parenthood are (1) to express love and affection; (2) express personal concern of the child's health, education and general well-being; (3) duty to supply necessary food, clothing and medical care; (4) duty to provide an adequate domicile: and (5) duty to furnish social and religious guidance. In re Angelica W.,49 Conn. App. 541, 55 1 (1 998). Justin's mother and father not only have failed to discharge those basic parental obligations, but the evidence clearly shows that they lack the resolve and the capacity to do so.
There should be no further delay in the implementation of the permanency plan for Justin, a plan which the State has clearly and convincingly demonstrated is in the best interest of this child.
 VII. THE STATUTORY FACTORS
As to father, the court has considered in making its determination as to whether termination of his parental rights is in Justin's best interest those factors provided in Section 17a-112 (k) of the Connecticut General Statutes.
1. The timeliness, nature and extent of services offered.
As noted no services were offered to father other than that most basic parental service that the department has to offer . . . visits with a child whose custody is with the department. Father was told to call the caseworker in May of this year if he wished to seek to visit with his son. Father ignored that invitation and made no request for any services from the department. Any other services which the department might offer father in this case, given father's complete lack of interest in the child's welfare, would have constituted a waste of the department's scarce resources.
2. Reasonable efforts to reunite.
This court finds that the department's request that father contact the caseworker should he desire to visit with his son satisfied the state and CT Page 14080 federal mandate as to reasonable efforts under the totality of the circumstances, in particular, father's demonstrated lack of interest in his child's welfare.
3. The fulfillment of court-ordered obligations.
As to father the most basic court-ordered obligation that he needed to follow was first to appear at the plea hearing and next to appear for trial . . . neither of which he chose to do. He failed to appear on two occasions at proceedings in which his most important familial rights were at stake.
4. The feelings and emotional ties of the child to father.
There is no evidence whatsoever that Justin has any relationship with his father who, as noted, has only seen his child during two brief visits, the first being two days after the child's birth and the second occurring some fifteen months later. Given that limited contact with his father, there is no possibility that this young child could have developed any feelings or emotional ties to his father. As to any emotional ties father may have developed for Justin, the proof is in the parental performance or lack thereof.
5. The age of the child.
Justin is now nineteen months old and has been out of his parent's care for his entire life.
6. The efforts the parent has made to adjust his circumstances, conductor conditions to make it in the best interest of the child to return saidchild to his home in the foreseeable future.
If Justin were to reside with father he would not be returning to a home from which he was removed as the only homes this child has known were the homes of non-parental caretakers. Father has offered no plan for his care of Justin because father lacks the commitment and the capacity to be a parental source for this child. His extensive criminal history and his manifest lack of involvement in his child's life compel this finding.
7. The extent to which a parent has been prevented from maintaining ameaningful relationship with the child by the unreasonable act or conductof the other parent of the child, or the unreasonable act of any otherperson or by the economic circumstances of the parent.
CT Page 14081
Neither the unreasonable act or conduct of the other parent of the children nor the unreasonable act of any other person nor economic circumstances of a parent has prevented Stephanie D. or Rodney H. from maintaining a meaningful relationship with their child. Mother and father have no one to blame but themselves for the permanent removal of Justin from their lives.
 VIII. CONCLUSION
This court finds by clear and convincing evidence that the termination of the parental rights of both of Justin's parents is in his best interest. Neither possesses the resolve or ability to provide the safe, secure, nurturing and permanent parental environment to which Justin is entitled. That essential environment has been and will, hopefully for the rest of his life, be provided by Pam H. and her family.
 IX. ORDERS
The court orders that: That parental rights of Rodney H. because of his abandonment of his child, Justin H., within the meaning of Section 17a-112
(j)(3)(A), be and are hereby terminated.
The parental rights of Stephanie D., based on her consent accepted by this court on October 29, 2002, be and are hereby terminated relative to said child.
The Commissioner of the Department of Children and Families is hereby appointed statutory parent for Justin H. who shall submit to the Superior Court for Juvenile Matters at Norwalk within 30 days of the date of this judgment, a case plan, and thereafter, such further reports as may be required until adoption by the foster parents is achieved.
 ___________________ WILSON J. TROMBLEY, JUDGE CHILD PROTECTION SESSION