IN RE AMNERIS P.*
(AC 20719)

Mihalakos, Dranginis and Daly, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b)
and Practice Book § 79-3, the names of the parties involved in this appeal
are not disclosed. The records and papers of this case shall be open for
inspection only to persons having a proper interest therein and upon order
of the Appellate Court.

378

Argued May 4—officially released October 23, 2001

*Carolyn C. Mihalek*, for the appellant (respondent mother).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Thomas F. Mitola*, for the minor child.

*Opinion*

DRANGINIS, J. The respondent mother, Blanca, L., appeals from the judgment of the trial court terminating her parental rights with respect to her minor daughter, A.[1] She claims that the court improperly (1) denied her motion to exclude testimony from an expert witness, (2) concluded that she had failed to achieve a sufficient degree of personal rehabilitation, (3) concluded that there was no ongoing parent-child relationship and (4) concluded that the department of children and families (department) had made reasonable efforts to reunite her with A. We affirm the judgment of the trial court.

The relevant facts found by the court are as follows. On August 8, 1992, A was born. A is the respondent's third child.[2] The department first became involved with this family on December 21, 1992, when it received an oral report from Bridgeport Hospital regarding A's sibling, J. A, herself, was taken to the hospital by the respondent in February, 1993. The respondent reported that A had a lump on her head and that she had been vomiting for two weeks. An examination revealed that A had a skull fracture. The respondent's explanation for how the accident happened was vague. A was returned to her mother's care after her hospitalization.

The situation in the family deteriorated during the course of 1993. By October, 1993, the respondent was unable to care for her children. On October 19, 1993, the respondent voluntarily placed A with the department, which placed her in a foster home, where she continues to reside to the present day. On February 10, 1993, the department received a report from Ann Yost, a social

---

[1] Although the trial court also terminated the parental rights of A's father, only the respondent mother has appealed from the judgment of the court. We therefore refer in this opinion to the respondent mother as the respondent.

[2] The respondent's fourth child was born during the pendency of the termination petition and remains in her care.

worker at Bridgeport Hospital, expressing concern about the family's poor social situation, namely, that the mother was young, overwhelmed, appeared to be of limited intelligence, had an abusive former boyfriend and exhibited poor judgment. Between 1993 and 1995, the respondent was homeless on several occasions, visited A only sporadically and did not take steps to deal with her drug addiction. Although the respondent was offered visitation and some services in the intervening time, it was not until January, 1997, that she became committed to rehabilitating herself and reuniting with her daughter.

On November 12, 1998, the petitioner filed a petition for the termination of the respondent's parental rights as to A. The respondent filed a motion for revocation of the commitment of her child, which was consolidated with the termination petition for trial. On February 8, 2000, the court denied the motion for revocation and granted the petition for termination of the respondent's parental rights. The court stated in its memorandum of decision: "[T]he court grants the petition . . . [as to the respondent] because of her failure to rehabilitate herself as a parent to this child and because there is no longer an ongoing parent-child relationship with her child." This appeal followed.

I

The respondent first claims that the court improperly denied her motion to exclude her expert from the petitioner's witness list. Specifically, the respondent claims that the petitioner's calling as a witness at trial the respondent's expert, Carol Swenson, a psychologist who had conducted an independent psychological evaluation of the respondent at the respondent's request, and the admission of Swenson's report into evidence, violated the attorney-client privilege and the work product rule.

The following additional facts are necessary for our resolution of the respondent's claim. On February 18, 1999, the respondent filed a motion requesting court fees to cover the costs of an independent psychological evaluation. On March 10, 1999, the court granted the motion and appointed Swenson to conduct the examination. By letter dated April, 13, 1999, Swenson was directed to send her reports directly to the respondent's counsel. On June 15, 1999, Swenson, in error, sent the psychological evaluation directly to the department and to the Juvenile Court in Bridgeport rather than to the respondent's counsel. On August 25, 1999, when the petitioner filed the required preliminary witness list, it included Swenson's name. On November 2, 1999, the respondent filed a motion to preclude Swenson from testifying and to bar the department from using any information contained in her psychological evaluation. On December 3, 1999, the court denied the respondent's motion, concluding that "because of the lapse of time in raising this issue, there is a waiver of whatever privilege may have existed." The court also stated: "I think that the harm that's being complained about could have been prevented by action, and I think, as such, as [counsel is] a representative of the mother, that waiver took place by inaction."

As a threshold matter, we note the proper standard of appellate review applicable to a trial court's determination on evidentiary matters. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal

quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 670, 760 A.2d 989 (2000).

The respondent has the burden of demonstrating that harmful error occurred. See *George* v. *Ericson*, 250 Conn. 312, 327, 736 A.2d 889 (1999). Whether error is harmless in a particular case depends on a number of factors, such as "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.' " *State* v. *Santiago*, 224 Conn. 325, 333, 618 A.2d 32 (1992).

In this case, even if we were to conclude that the court improperly denied the motion to preclude the respondent's expert from testifying, the respondent also would have to demonstrate that the ruling was harmful and likely to affect the result of the trial. See *Hayes* v. *Manchester Memorial Hospital*, 38 Conn. App. 471, 475, 661 A.2d 123, cert. denied, 235 Conn. 922, 666 A.2d 1185 (1995). The court terminated the respondent's parental rights because of her failure to achieve sufficient rehabilitation as a parent and because there was no longer an ongoing parent-child relationship. In making that determination, the court relied on both the evaluation of the respondent that was conducted by Jill Ramsey-Edgar, a court-appointed clinical psychologist, and Swenson's evaluation.

The court stated in its memorandum of decision: "[Ramsey-Edgar] noted that [A] did not seem connected to [the respondent] and was critical and rude to her as the interview progressed. [The respondent] was not able to engage the child and set limits for her. Dr. Ramsey-Edgar testified that she had grave concerns about reunification based on what she saw [as the inter-

view progressed. A's] reaction to her mother was not positive, [Ramsey-Edgar] noted, and the child went out of her way to let her know that her foster mother was her 'mommy.' " We conclude that the court had sufficient evidence to terminate the respondent's parental rights without considering Swenson's testimony. Therefore, even if it was improper to admit Swenson's testimony and report, it was harmless.

## II

The respondent's second claim is that the court improperly found that she had failed to achieve a sufficient degree of personal rehabilitation. We disagree.

The court concluded it its memorandum of decision: "[The respondent's] lack of rehabilitation must be seen from [A's] optic, for [the respondent] was not able to maintain a reasonable relationship with her or reestablish one. Her own testimony highlights her lack of understanding of this child's needs and her inability to resume a constructive or useful role in the child's life. Given the length of time [that the respondent] has been receiving services and her failure to begin to understand her child, the court finds that the evidence is clear and convincing that there is no prospect that [the respondent] will be rehabilitated with respect to this child within the foreseeable future."

Failure of a parent to achieve a sufficient degree of personal rehabilitation is one of the statutory grounds on which a court may terminate parental rights pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B), now (j) (3) (B). That ground exists when a parent of a child whom the court has found to be neglected fails to achieve such a degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position in the life of that child.

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation [she] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [she] can assume a responsible position in [her] child's life. . . . *In re Eden F.*, [250 Conn. 674, 706, 741 A.2d 873 (1999)]. This court recently explained that in assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child at issue. . . . *In re Shyliesh H.*, [56 Conn. App. 167, 180, 743 A.2d 165 (1999)]." (Internal quotation marks omitted.) *In re Sarah Ann K.*, 57 Conn. App. 441, 448, 749 A.2d 77 (2000). A court's determination "that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Tabitha T.*, 51 Conn. App. 595, 602–603, 722 A.2d 1232 (1999).

The court considered the fact that the respondent had made progress in recovering from drug abuse and in rehabilitating her life. Ultimately, however, the court concluded that her rehabilitation fell short by analyzing her progress with respect to her relationship with the child. The respondent claims that it was improper for the court to measure her rehabilitation "from [A's] optic." The statute requires the court to analyze the respondent's rehabilitative status as it relates to the

needs of the particular child. *In re Eden F.*, supra, 250 Conn. 706. "[I]n assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue." (Internal quotation marks omitted.) *In re Shyliesh H.*, supra, 56 Conn. App. 180.

Although the respondent may have achieved a level of stability within her limitations, the court had more than sufficient evidence to support a finding that her personal gains were not made in a timely way so as to assist her child. The court's finding that the child should not be further burdened by having to wait for her mother to achieve the level of competency necessary to parent her was fully supported by the evidence.

### III

The respondent's third claim is that the court improperly found that no ongoing parent-child relationship existed. For the reasons set forth, we decline to review her claim.

In part II, we concluded that the court properly found that the respondent had failed to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (c) (3) (B), now (j) (3) (B). We need uphold only one statutory ground found by the court to affirm its decision to terminate parental rights. *In re John G.*, 56 Conn. App. 12, 20 n.4, 740 A.2d 496 (1999). "To prevail on her claim that the court improperly terminated her parental rights, the respondent must successfully challenge *all of the bases* of the judgment terminating her parental rights. If [any] of the grounds on which the trial court relied are upheld on appeal, the termination of parental rights must stand." (Emphasis added; internal quotation marks omitted.) Id. Because one statutory ground for termination properly exists, namely, failure to achieve a sufficient degree of personal rehabilitation, the

respondent cannot successfully challenge all of the bases of the termination of her parental rights. We therefore do not reach the respondent's claim that the court improperly found that no ongoing parent-child relationship existed. See *In re Shane P.*, 58 Conn. App. 234, 243, 753 A.2d 409 (2000).

## IV

Finally, the respondent claims that the court improperly concluded that the department had made reasonable efforts at reunification. We disagree.

Before a court may grant a petition to terminate parental rights on the basis of a parent's failure to achieve a sufficient degree of personal rehabilitation, the court must find by clear and convincing evidence that the department has made reasonable efforts to reunite the child with the parent. General Statutes (Rev. to 1997) § 17a-112 (c) (1), now (j) (1).

"The term reasonable efforts was recently addressed by this court: Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . *In re Tabitha T.*, [supra, 51 Conn. App. 600]." (Internal quotation marks omitted.) *In re Antony B.*, 54 Conn. App. 463, 474–75, 735 A.2d 893 (1999).

The record discloses that the department made efforts to provide the respondent with services to help reunify her with A. Some of those services included referrals to deal with issues of domestic violence, parenting and substance abuse, visitation and services to benefit A. The court found that those efforts were hampered by the respondent's passivity, her cognitive limitations and the extended period of time that had elapsed from the time of the child's placement until the respondent's decision to begin work toward rehabilitation. We cannot conclude that the court committed clear error in finding that the department had made reasonable efforts to reunite the child with the respondent.

The judgment is affirmed.

In this opinion the other judges concurred.