MEMORANDUM OF DECISION RE: TERMINATION OF PARENTAL RIGHTS
This memorandum of decision addresses a petition to terminate the parental rights (TPR). of the respondent mother Lisa B. (Lisa), and the respondent father John Z. (John), the biological parents of Cody B, born 1/94. The petition alleges the grounds of abandonment as to John, failure to rehabilitate as to Lisa and lack of an ongoing parent-child relationship as to both Lisa and John.
The Department of Children and Families (DCF) first obtained custody of Cody through a 96 hour hold on 3/27/98 and an Order of Temporary Custody (OTC) granted on 3/31/98. On 5/27/98, Cody was adjudicated neglected and on 5/27/98 was committed to the care and custody of the Commissioner of DCF. Extensions of commitment were granted on 4/15/99, 5/18/00, 5/18/01, and 5/15/02. Cody has been placed in his current foster home since 8/4/98.
On 9/3/02, DCF filed this TPR petition against Lisa and John. On 10/3/02, Lisa appeared, entered a denial to the petition and was appointed counsel. John did not appear and was noticed by publication for 11/13/02. On that date, John did not appear and was defaulted. On the same date, the court granted the State's motion to consolidate the TPR trial and the State's motion to review the permanency plan. Trial was scheduled for 12/10/02 at 1000 hrs.
On that date, at approximately 1000 hrs., court opened in order to commence trial of this these matters. Lisa was absent; her counsel represented that she was late and that he anticipated that she would arrive shortly. Lisa's counsel proceeded with a motion to change venue of CT Page 585 this case to the Child Protection Session in Middletown. The motion was denied and the case passed in order to wait for Lisa.
After a wait of over 30 minutes, the trial commenced. Lisa was still not present. At the request of the Assistant Attorney General(AAG) and counsel for the child, Lisa was defaulted. The State called its only witness, DCF social worker Erica Singleton. Shortly after Singleton took the stand, Lisa arrived in the courtroom. Her counsel made an oral motion to reopen the default. Both the (AAG) and counsel for the child objected, and the court denied the motion.[2] The State also submitted into evidence copies of the DCF social study, DCF permanency plan and Connecticut State Police Bureau of Identification criminal records for the respondents.[3]
This court has jurisdiction over the pending matters. Notice has been provided in accordance with the applicable provisions of the Practice Book. This court has no reason to believe that there is any action is pending in any other court affecting custody of the child at issue.
I. FACTUAL FINDINGS
The court has reviewed the verified petition, the TPR social study, the permanency plan and the two CSPBI criminal records submitted in evidence. The court has utilized the applicable legal standards[4] in considering this evidence and the testimony of the witness. Upon deliberation, the court finds that the following facts were proven by clear and convincing evidence at trial:
I.A. EVENTS PRIOR TO THE NEGLECT ADJUDICATION OF 5/27/98
Lisa was born in 2/65 in Bridgeport, Connecticut, the youngest of four siblings. She has one brother and two sisters. Her father passed in 1995 as a result of liver disease. Lisa has resided in Bridgeport most of her life. She attended a local high school but left in the middle of the 11th grade in order to mother her oldest daughter, Tina B. (Tina). Lisa obtained her GED in 1986. She reported being engaged to John in the past.
Lisa and her family moved frequently over the years while in Bridgeport. Her father had a drinking problem and difficulty holding a job, and her mother supported the family with state assistance. Her mother was physically and verbally abusive to her, and Lisa suffered from enuresis. Lisa left home at 13 or 14 years of age to stay with friends. She later returned home and then left again. Lisa became pregnant at 17 years of age and began to support herself with state assistance. She did CT Page 586 not return home. Lisa does not have a relationship with her mother at this time.
Lisa is a convicted felon and has an extensive criminal history dating back to 1985 for Breach of Peace (2 counts), Burglary in the Third Degree (4 counts), Custodial Interference in the Second Degree, Assault in the Third Degree (5 counts), Possessing A Weapon in a Correctional Institution, Violation of Probation, Reckless Endangerment in the First Degree (2 counts), Risk of Injury to A Child, Failure to Appear in the Second Degree, Threatening (3 counts), Criminal Trespass in the First Degree, Larceny in the Fourth Degree, Forgery in the Third Degree, and Larceny in the Sixth Degree (2 counts).
Lisa has a history with DCF which predated Cody's neglect adjudication. On 5/5/97 physical neglect and emotional neglect was substantiated due to inadequate supervision against her. On 4/16/98 physical neglect was substantiated due to inadequate supervision and abandonment.
Lisa has four other children. On 3/27/98 DCF invoked a 96 Hour on behalf of all five children. On 3/31/98, an OTC was granted and was subsequently sustained on 4/8/98. On 5/27/98 all five children were adjudicated neglected and on 5/27/98 the children were committed to the care and custody of DCF.
Tina is 19 years old and Lisa's oldest child. She resides in North Carolina. Sheena is 16 years old and resides with her mother. She is Lisa's second oldest child. Jessica is 13 years old and is Lisa's third oldest child. Jessica also resides with her mother. Melissa is Lisa's fourth oldest child and, like Cody, was fathered by John. Melissa lives at home with Lisa and her sisters.
Lisa continues to reside on Plaza Avenue in Waterbury with three of her daughters. She is currently unemployed and receives income through State Public Assistance. She told DCF that she doesn't have to pay rent because she was approved for a section 8 voucher.
DCF's information provided on the respondent father was obtained from case records, due to his unwillingness to make himself available for this study.
John was born in 5/59, and was one of four siblings, having a twin brother and two older sisters. He reported being close to his brother and sisters, growing up together as a family. His parents are deceased. CT Page 587
As a young man, John recalled his mother as being a homemaker, while his father provided for the family by operating his own business. John reported that his father's method of discipline was to remove privileges when he misbehaved. John uses the same method when disciplining his children. The family was raised practicing the Catholic faith and attended church on Sundays. John considers himself a Catholic.
John attended Bassick High School in Bridgeport, Connecticut, but he did not graduate. He later received a GED certificate and took up a trade as a roofer. John reported working various jobs and owning his own bicycle shop. John has an extensive criminal history dating back to 1977. He has convictions for Possession of Drug Paraphernalia, Sale of Narcotics (7 convictions), Breach of Peace (5 counts), Assault in the Third Degree (2 counts), Threatening, Arson in the Third Degree, Burglary in the Third Degree (3 counts), Conspiracy (2 counts), Burglary in the Second Degree, Robbery in the First Degree (4 counts), Reckless Endangerment in the First Degree, Carrying A Dangerous Weapon, Possession of Marijuana (3 counts), Larceny in the Third Degree, Illegal Use of A Credit Card, Criminal Mischief in the Third Degree, Criminal Attempt to Commit Burglary in the Third Degree, Carrying A Weapon in A Motor Vehicle and Criminal Trespass in the Third Degree.
I.B. EVENTS FOLLOWING THE NEGLECT ADJUDICATION OF 5/27/98
On 4/15/99, the court found that reunification efforts were no longer appropriate with John. Extensions of commitment was granted on 4/15/99, 5/18/00, 5/18/01 and 5/15/02. On 4/18/01, a revocation of commitment was granted on behalf of Tina and modified commitment of Sheena, Jessica, and Melissa to six months of protective supervision.
On 5/6/02, DCF substantiated inadequate supervision against Lisa after Cody reported that she had left him alone with his teenage sister who was smoking marijuana in his presence.
I.C. CODY
Cody is an nine year old boy born on January 1994 to Lisa and John. Cody has been in DCF's care since he was four years old. On 3/27/98, DCF invoked a 96 Hour Hold on behalf of Cody and an Order of Temporary Custody was granted on 3/31/98. Cody has not been returned to his mothers care since. On 5/27/98 Cody was adjudicated neglected and on 5/27/98 was committed to the care and custody of the Commissioner of DCF. Extensions of commitment were granted on 4/15/99, 5/18/00, 5/18/01, and 5/15/02. Cody has been placed in his current foster home since 8/4/98. Cody has had difficulty in his placement, but had been able to control his CT Page 588 behavior with the assistance of medication. Cody was diagnosed as having ADHD and is currently taking Dexedrine twice a day. He is also being seen for individual counseling at the Child Guidance Clinic. Cody has developed a close bond with his foster family and refers to his foster mother and father as "mom and dad". His foster family is interested in providing long term foster care for Cody. On 5/6/02 DCF substantiated inadequate supervision against Lisa after Cody reported that she had left him alone with his teenage sister who was smoking marijuana in his presence.
I.D SIBLINGS
Tina is 19 years old and Lisa's oldest child who resides in North Carolina. It is reported that Tina has expressed anger towards her mother as she referred to her mother as irresponsible because she and her siblings were in DCF's care.
Sheena is 16 years old and resides with her mother. She is Lisa's second oldest child. She is reported as being parentified. She has not attended school regularly since she was returned to her mothers care and the school filed a FWSN in regards to Sheena's truancy.
Jessica is 13 years old and is Lisa's third oldest child. Jessica also resides with her mother. Since her return to her mother's care she also hasn't been attending school regularly and was arrested for Larceny in the Sixth Degree in January 2001. Jessica is reported as attending school more since her arrest.
Melissa is Lisa's fourth oldest child and is also the child of John. Melissa is reported as being disruptive in the home in regards to her behavior. She has also been reported as failing to attend school regularly.
II. ADJUDICATION
In the adjudicatory phase of these proceedings,[5] the court has considered the evidence related to circumstances and events occurring prior to September 3, 2002, the dates upon which the TPR allegations of abandonment and lack of an ongoing parent-child relationship were filed against Lisa and John.[6] With regard to the allegations of failure to achieve rehabilitation brought against Lisa, the court has considered the evidence and testimony related to circumstances occurring through the close of trial.[7] Upon review, as discussed below, the court has determined that statutory grounds for termination exist as to both Lisa and John. CT Page 589
II.A. LOCATION AND REUNIFICATION EFFORTS
The court finds that the petitioner has met its burden of proving, by clear and convincing evidence, that reasonable efforts were made to locate and reunify Lisa and John with their child.[8] Based on the clear and convincing evidence produced at trial, the court finds that, under the circumstances of this case, both Lisa and John are either unable or unwilling to benefit from reasonable reunification efforts as contemplated by General Statutes § 17a-112 (j) (1).[9]
Multiple services have been provided to Lisa in an effort to reunify her in parenting role with the child at issue in this case. Over the years, DCF has provided casework services and transportation and referred mother to substance abuse treatment, individual counseling, parenting classes, family counseling and in-home family preservation services through the Morris Foundation for substance abuse evaluation and treatment, Family Ties for parenting classes, Waterbury Youth Services for individual and family counseling, AA/NA meetings and Boys Village for in-home family preservation services.
Unfortunately, after over four years of Cody being in DCF's care, Lisa continues to demonstrate her inability to appropriately care for Cody as she has failed to refrain from substances and continues to provide inadequate supervision of her children. She has failed to rehabilitate in that she was arrested on 2001 for Operating Under The Influence. She has an open family case with DCF for failure to send her children to school, and inadequate supervision as she left Cody alone with his sibling who he reports was abusing substances. Accordingly, the court concludes that although Lisa has attended service programs, she is fundamentally either unable or unwilling to reap any meaningful, lasting benefit from reunification efforts.
John refused to make himself available for these proceedings despite DCF's reasonable efforts to locate him. He has been represented by the same counsel in this matter since 10/13/00. Reunification services were inappropriate and unnecessary for John as he has not demonstrated any interest in Cody, has never contacted DCF concerning Cody's status, has refused to contact DCF concerning Cody and because his location could not be reasonably determined. In view of this lack of interest and cooperation, the court concludes that John is unwilling or unable to benefit from any such services.
II.B. STATUTORY GROUNDS FOR TERMINATION AS TO LISA CT Page 590
II.B.1. FAILURE TO REHABILITATE — § 17a-112 (j) (3) (B) (i)
The petitioner first alleges that Lisa's parental rights should be terminated because she has failed to achieve rehabilitation within the meaning of § 17a-112 (j) (3) (B).[10] As Cody has been adjudicated neglected, the critical issue for this court is whether this respondent has achieved rehabilitation sufficient to render her able to care for Cody. Applying the requisite legal standards[11] and construing the statute in compliance with the mandate of § 17a-112 (p),[12] the court finds this issue in favor of the petitioner.
Several aspects of the clear and convincing evidence in this case compel the conclusion Lisa has yet to achieve a sufficient "level of rehabilitation . . . which would reasonably encourage a belief that at some future date she can assume a responsible position in her [child's lives]." In re Sarah Ann K., supra, 57 Conn. App. 448. See In re Daniel C., 63 Conn. App. 339, 354, 776 A.2d 487, ___ A.2d ___ (2001); In re Ashley S., supra, 61 Conn. App. 665. First, the credible evidence in this case, presented through the DCF social study, and the testimony of social worker Singleton clearly and convincingly establishes that Lisa has not achieved § 17a-112 (j) (3) (B) rehabilitation. The court credits the DCF reports and the testimony which showed that despite all the programs in which she has participated over the past decade, Lisa's judgment remains impaired to an extent that interferes with her parenting capacity. Additionally, the evidence clearly and convincingly indicates that Lisa has failed to satisfactorily fulfill some of the specific steps that were assigned to assist her in achieving rehabilitation.
Lisa has a history of unstable housing and unemployment, although DCF admits that her housing at the time of social study was adequate. She continues to abuse substances, as evidenced by her arrest on 10/29/01 by the Shelton Police Department for Operating Under the Influence.
Lisa has continued to have further involvement with the criminal justice system, despite the specific steps to the contrary. In addition to the above mentioned Operating Under The Influence arrest, Lisa was arrested on 10/14/01 for Breach of Peace. On 5/31/02, she was arrested in the same case for failure to Appear in the Second Degree, and, on 6/14/02, was convicted of Breach of Peace and was fined $100.00.
Lisa was advised by the court and by the petitioner on numerous occasions that she needed to address her substance abuse, her criminal conduct, and her failure to send her children to school regularly. However, Lisa has not been successful in overcoming these problems. She has failed to abide by a service agreement dated 3/1/99, in that she has CT Page 591 abused substances and had further involvement with the criminal justice system. The social study reports continued problems with the behavior of her daughters Sheena, Jessica and Melissa.
Lisa has never offered a plan for the care of the child. On 12/28/00 and several other occasions, mother admitted to Social Worker Andrew Simpson that she cannot care for Cody.
On 12/11/98, 12/22/98 and 2/18/99, Lisa was convicted of four felony counts of Burglary in the Third Degree and one misdemeanor count of Custodial Interference in the Second Degree, receiving a total effective jail sentence of 18 months. She was held in jail, commencing on 8/13/98, and was released on 6/23/99.
Finally, on 5/6/02, DCF substantiated inadequate supervision against Lisa after Cody reported that she had left him alone with his teenage sister who was smoking marijuana in his presence.
The court is aware that Lisa has completed some of the specific steps ordered in this case. The social study indicates that she has kept all appointments set by DCF, kept her whereabouts known to DCF, participated in counseling, submitted to random drug testing, visited the children as often as DCF permitted (although the social worker described her as being consistently late for visits), signed releases, submitted to substance abuse assessments and maintained adequate housing. Unfortunately, the State has shown, by clear and convincing evidence, that she failed to comply with the remaining steps.
For four years, despite the services offered, Lisa has failed to demonstrate that within a reasonable time, considering Cody's age and needs, she could assume a responsible position in his life. The clear and convincing evidence reveals that from 5/27/98 and continuing through the time of trial, Lisa participated in rehabilitation regimens, yet she remains without the qualities necessary to successfully parent her children. Effectively, she was no better able "to resume the responsibilities of parenting at the time of filing the termination petition than [she] had been at the time of [Cody's] commitment." In re Hector L., supra, 53 Conn. App. Given the ages, sensibilities, needs and satisfactory current placement of the child involved, and given Lisa's history of services and continued problems, it would be unreasonable to conclude that she will be able to achieve rehabilitation from her substance abuse, criminal behavior and parenting deficits, so as to be able to serve as a safe, responsible parent within a reasonable time. Accordingly, based on the clear and convincing evidence presented in this case, the court finds that the petitioner has proved that Lisa has failed CT Page 592 to achieve rehabilitation pursuant to § 17a-112 (j) (3) (B).
II.B.2. LACK OF ONGOING PARENT-CHILD RELATIONSHIP — § 17a-112
(j) (3) (D)
The petitioner next alleges that no ongoing parent-child relationship exists between Lisa and Cody, and that the child's best interests will not be served by allowing additional time for this relationship to be developed, so that the TPR petition should be granted pursuant to General Statutes § 17a-112 (1) (3) (D). Applying the requisite legal standards, and construing the statute in compliance with the mandate of § 17a-112 (p), the court finds this matter in favor of the petitioner by clear and convincing evidence.
The relevant legal algorithm first requires the court to determine whether a parent-child relationship exists between Lisa and Cody. In In re Jonathon G., supra, 63 Conn. App. 525, the Appellate Court held:
 [Connecticut] General Statutes (Rev, to 1999) § 17a-112 (c) (3) (D), now (j) (3) (D), provides that the court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. . . ."
 "This part of the statute requires the trial court to undertake a two-pronged analysis. First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop. . . . In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. See In re Michael M., [29 Conn. App. 112, 129, 614 A.2d 832 (1992)]; In re Megan M., [24 Conn. App. 338, 341, 588 A.2d 239 (1991)]. The ultimate question is whether the child has no present memories or feelings for the natural parent. In re Jessica M., [217 Conn. 459, 468, 586 A.2d 597 (1991)]; In re Juvenile Appeal (84-6), [2 Conn. App. 705, 708-709, 483 A.2d 1101
(1984), cert. denied, 195 Conn. 801, 487 A.2d 564 (1985)]. Feelings for the natural parent connotes feelings of a positive nature only. In re Jessica M., supra, 469; In re Juvenile Appeal (84-6), supra, 709. In re Kezia M., 33 Conn. App. 12, 20-21, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993)." (Citations omitted; internal CT Page 593 quotation marks omitted.) In re Tabitha T., 51 Conn. App. 595, 601-602, 722 A.2d 1232 (1999).
In doing so, the court acknowledges that, at one time, Lisa probably served as a parent for this child. Cody was born in 1994, and was not taken into custody by DCF until 1998. It is presumed that Lisa served in a parental capacity for that period of time. The question remains as to whether there is a parent/child relationship today, or whether it could be established without detriment to Cody.
In discerning the existence of a parent-child relationship, the court must also determine whether Cody maintains any present feelings for Lisa and, if so, whether those feelings are of a positive nature. In re Jonathon G., supra, 63 Conn. App. 525. The clear and convincing evidence establishes that during visits with Lisa, Cody exhibits no bond or affection towards Lisa. He does not seek comfort or affection from Lisa. He has not requested visits with Lisa.
Cody exhibits behavioral problems after visits with Lisa, such as being oppositionally defiant and physically aggressive. He never asks for or talks about his mother and has no positive memories of her. Cody is allowed to call his mother but has never requested to do so.
Cody is in need of permanency, and is faring well in his current placement. In re Jonathon G., supra, 63 Conn. App. 525.
As the clear and convincing evidence in this case establishes that no ongoing parent-child relationship exists between Lisa and Cody, and that it is not in the best interests of the child to allow more time for this respondent to develop a relationship with him, the petitioner has met its burden of proof under § 17a-112 (j) (3) (D). In re Jonathon G., supra,63 Conn. App. 525; In re John C., supra, 56 Conn. App. 22.
II.C. STATUTORY GROUNDS FOR TERMINATION AS TO JOHN
Despite due notice, John has failed to appear at or to participate in these proceedings. He was found in default after publication on 11/13/02. Pursuant to Practice Book § 34-2, establishing that juvenile hearings are essentially civil proceedings, the default against John establishes admission of the material facts constituting the petitioner's cause of action, conclusively determining that the petitioner has prevailed on the TPR petition. Bank of America, FSB v. Franco,57 Conn. App. 688, 693, ___ A.2d ___ (2000). In addition, as discussed in Parts II.C.1. and 2., below, the clear and convincing evidence in this matter establishes that the petitioner has met its burden of proving the CT Page 594 alleged statutory grounds for terminating John's parental rights.
II.C.1. ABANDONMENT — § 17a-112 (j) (3) (A)
The petitioner first alleges that John abandoned his son Cody, within the meaning of § 17a-112 (j) (3) (A).[13] In the absence of evidence to the contrary, applying the requisite legal standards[14] and construing the statute in compliance with the mandate of § 17a-112
(p), the court finds this matter in favor of the petitioner.
The clear and convincing evidence related to John's conduct reveals that from 5/27/98 through September 3, 2002, and continuing through the time of trial, this respondent failed "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . ." In re Deana E., supra, 61 Conn. App. 193. He has not seen Cody since 10/26/00. John has never sent any cards, gifts, letters or other communications to his son. John's whereabouts have been unknown recently, in view of the default. John has contacted DCF once to show concern for Cody, but has not expressed any interest since. He has not contacted DCF since or the foster parents in an effort to learn the fate of his son. He refused to co-operate with DCF's attempts to write a complete social study. John was incarcerated since September 1998 and was released March 2002. John has also failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child.
When the adjudicatory date of 5/27/98 is applied, the evidence in this matter clearly and convincingly establishes that John has failed the test of meeting "[t]he commonly understood obligations of parenthood" identified by In re Deana F., supra, 61 Conn. App. 193. Accordingly, based on clear and convincing evidence presented in this case, the court finds that the petitioner has met its burden of proving that John has abandoned Cody, within the meaning of § 17a-112 (j) (3) (A).
II.C.2. LACK OF ONGOING PARENT-CHILD RELATIONSHIPS — § 17a-112
(j) (3) (D)
The petitioner next alleges that no ongoing parent-child relationship exists between John and Cody, and that the child's best interests will not be served by allowing additional time for this relationship to be developed, so that the TPR petition should be granted pursuant to General Statutes § 17a-112 (1) (3) (D).[15] Applying the requisite legal standards, and construing the statute in compliance with the mandate of § 17a-112 (p), the court finds this matter in favor of the petitioner. CT Page 595
The relevant legal algorithm first requires the court to determine whether a parent-child relationship exists between John and his child.[16] In re Jonathon G., supra, 63 Conn. App. 525. In doing so, the court adopts the abandonment findings set forth in Part II.C. 1., which; indicate that John has never functioned in a parental role for this child, at the latest, since 10/26/00. In discerning the existence of a parent-child relationship, the court must also determine whether the child maintains any present feelings for John and, if so, whether those feelings are of a positive nature. In re Jonathon G., supra, 63 Conn. App. 525. The clear and convincing evidence establishes that Cody does not mention or express any feelings about John, and that he has no feelings for him that are of a positive nature. From this, it is apparent that no parent-child relationship exists between John and Cody.[17] Furthermore, it would be detrimental to the child's best interests to allow additional time for a parenting relationship to be developed with John since he refuses to make himself available to DCF and to Cody. Aside from one telephone call to DCF, John has never demonstrated an interest in Cody since 10/26/00.
Cody is in need of permanency; he is faring well in his current placement. In re Jonathon G., supra, 63 Conn. App. 525.
As the clear and convincing evidence in this case establishes that no ongoing parent-child relationship exists between John and the child, and that it is not in the best interests of the child to allow more time for this respondent to develop a relationship with his biological child, the petitioner has met its burden of proof under § 17a-112 (j) (3) (D). In re Jonathon G., supra, 63 Conn. App. 525; In re John C., supra,56 Conn. App. 22.
III. DISPOSITION
As the court has concluded that statutory grounds for termination exist, it next "must determine whether termination is in the best interests of the child." (Citation and quotation marks omitted.) In re Quanitra M., supra, 60 Conn. App. 103. In this dispositional phase, the court has considered the evidence and testimony related to circumstances and events through the close of evidence. Practice Book 33-5.
III.A. SEVEN STATUTORY FINDINGS
The court has made each of the seven written factual findings required by General Statutes § 17a-112 (k) based upon the clear and convincing evidence presented at trial, and has considered the evidence relevant to CT Page 596 each of these findings in deciding whether to terminate parental rights.[18] See In re Jonathon C., supra, 63 Conn. App. 528.
III.A.1. TIMELINESS, NATURE AND EXTENT OF SERVICES — § 17a-112
(k) (l)
As set forth in Parts I. and II., DCF provided multiple timely and appropriate services for Lisa. Those services included casework services, transportation, referrals for substance abuse treatment, individual counseling, parenting classes, family counseling and in-home family preservation services. These were through the Morris Foundation for substance abuse evaluation and treatment, Family Ties for parenting classes, Waterbury Youth Services for individual and family counseling, AA/NA meetings and Boys Village for in-home family preservation services. Furthermore, the court has found in Part II.A. that this respondent mother is unwilling or unable to achieve timely benefit from the extension of additional reunification efforts.
Provision of services would have been inappropriate for John, as he was unwilling or unable to benefit from any reunification or rehabilitative efforts.
III.A.2. REUNIFICATION EFFORTS PURSUANT TO FEDERAL LAW — §17a-112 (k) (2)
Through the services provided to Lisa as described in Parts I. and II., DCF made reasonable efforts to reunite the child with this respondent, pursuant to the Federal Adoption Assistance and Child Welfare Act of 1980, as amended. As to John, the court reiterates its finding that he was neither able nor willing to benefit from reunification efforts.
III.A.3. COMPLIANCE WITH COURT ORDERS — § 17a-112 (k) (3)
Lisa partially complied with the specific steps imposed by the court. She has kept all appointments with DCF; kept her whereabouts known to DCF; participated in counseling; signed all releases; submitted to substance abuse assessments; submitted to random drug testing; maintained adequate housing and visited her child as often as DCF permitted, although the social worker described her as being consistently late for visits. However, despite her program participation, the evidence reveals that this respondent has not satisfactorily fulfilled a number of fundamental aspects of the specific steps. Although she has attended programs, she has not successfully refrained from substance abuse. She has not maintained employment. She has failed to comply with her service CT Page 597 agreement with DCF. Notwithstanding the steps' specific proscription of such activity, she became involved with the criminal justice system, and was convicted for Breach of Peace. A charge of Operating Under the Influence remains pending.
It appears that no orders were in effect in this case as to John
III.A.4. THE CHILD'S FEELINGS AND EMOTIONAL TIES — § 17a-112
(k) (4)
Cody has been in foster care for a period in excess of half of his life. He has been residing in his current foster home for 4 years and has developed a strong bond with his foster family and their extended family. Cody looks to them for comfort and security. He is observed to be comfortable and happy in his placement.
Cody is diagnosed with ADHD and his foster mother has demonstrated her ability to manage his behavior. She is clearly committed to Cody's best interest and have expressed interest in providing long term foster care to him and possibly adopting him. Cody has expressed interest in residing with either the foster family or his biological family.
There is no evidence of any positive emotional ties to John
III.A.5. AGES OF THE Child — § 17a-112 (k) (5)
Cody was born on 1/94 and is nine years old. As indicated above, he has been in foster care for a period in excess of half of his life.
III.A.6. PARENTS' EFFORTS TO ADJUST THEIR CIRCUMSTANCES — §17a-112 (k) (6)
While she has attended rehabilitation programs and has complied with some of the steps, Lisa has relapsed into her life-long pattern of substance abuse and criminal behavior. Overall, she has not made realistic and sustained efforts to conform her conduct to acceptable parental standards. The problems that Cody's siblings have manifested since their return to her care clearly and convincing indicate that Lisa is not succeeding in the parental role.
John has not maintained adequate contact with the foster parents or DCF regarding the status of his child, and has not in any way adjusted his circumstances so that he can fulfill a parental role for Cody.
Giving either Lisa or John additional time, considering Cody's age and CT Page 598 needs, would not likely bring their parenting performance within acceptable standards sufficient to make reunification in Cody's best interests.
III.A.7. EXTENT TO WHICH PARENTS WERE PREVENTED FROM MAINTAINING RELATIONSHIPS WITH THE CHILD — § 17a-112 (k) (7)
No unreasonable conduct by the child protection agency, foster parents or third parties prevented either Lisa or John from maintaining relationships with the child at issue in this case. Although the limitations inherent in the foster care system were in effect, Lisa's economic circumstances did not prevent the maintenance of such relationships.
III.B. BEST INTERESTS OF THE Child — § 17a-112 (j) (2)
The court is next called upon to determine whether terminating the parental rights of Lisa and John would be in Cody's best interests.[19]
Applying the appropriate legal standards[20] to the facts which are clearly and convincingly apparent in this case, the court finds this issue in favor of the petitioner.
In determining whether termination of the respondents' parental rights would be in the child's best interests, the court has examined the relevant factors, which include their opportunities for sustained growth, development, well-being, stability and continuity of their environment; their length of stay in foster care; the nature of their relationship with the foster parents and biological parents; and the degree of contact maintained with their biological parents.[21] In re Alexander C., 60 Conn. App. 555, 559, ___ A.2d ___ (2000); In re Shyina B., 58 Conn. App. 159, 167, ___ A.2d ___ (2000); In re Savanna M., supra, 55 Conn. App. 816. In a matter such as this, the court is further called upon to balance the child's intrinsic need for stability and permanency against the benefits of maintaining a connection with his biological parents. See Pamela B. v. Ment, 244 Conn. 296, 314,709 A.2d 1089 (1998) (child's physical and emotional well-being must be weighed against the interest in preserving family integrity). Under such scrutiny, the clear and convincing evidence establishes that, in this matter, it is not in Cody's best interests to continue to maintain any legal relationship with either parent.
It appears that Lisa has affection and concern for Cody, and that she is interested in his well-being. She regularly visits him and there is no evidence that she does not conduct herself appropriately at those visits. However, when assessing the best interest issues in this case, it CT Page 599 is important for all to acknowledge that parenting involves more than showing appropriate interest in and for one's child. Parenting involves significant capacity to provide nurturing care, and the ability to show dedication and consistent, predictable, safe and reliable support for the child in question. The circumstances of this case clearly and convincingly reflect that Lisa has never reached the point where she can be relied upon to meet these critical elements of parenting. Her continuing problems with crime and substance abuse and her present parenting problems with her daughters make Cody's return to her care an exercise in futility. In view of Cody's needs and especially his special needs, a stable home environment is even more critical.
Overall, in this case, "[a] parent's love and biological connection . . . is simply not enough" to serve as the basis for continuing the legal relationship between the respondent mother and her children. In re Ashley S., supra, 61 Conn. App. 667.
Cody has a healthy bond with his foster family and is described as being comfortable and happy there. As a result of Lisa's problems, Cody has spent the majority of his life with this foster family. The foster family is committed to providing long term care for him.
Cody's counsel indicated that Cody did not wish to decide whether to be adopted on not. He did point out that Cody's foster home was a good one.
Cody's guardian at litem (GAL) observed that Cody needs a structured environment and that he receives it in the foster home. He also indicated that Lisa would not prove that structure.
The GAL also pointed out that, at the foster home, Cody has a foster brother who is a role model and whom he emulates. The GAL stated that Cody was happy at the foster home.
Social worker Singleton also made several relevant points in her testimony that were crucial to the issue of Cody's best interests. Singleton emphasized that Lisa had previously admitted to DCF that she could not take care of her son. Additionally, she also brought out the fact that Lisa's behavior with the foster mother was inappropriate. She has apparently threatened the foster mother in the past, had shown up at the foster home unexpectently and had left the foster mother in fear of her.
Singleton testified that the foster mother had done a tremendous job in caring for Cody, that Cody had bonded with her and that the foster mother was interested in adopting Cody, but was afraid of Lisa and what Lisa CT Page 600 might do. Singleton opined that the TPR was in Cody's best interests.
Cody is young and is dependent upon a responsible, nurturing caregiver. He has behavioral issues for which he will need a patient yet stern caregiver. Unfortunately, he has a biological mother who cannot conform her conduct to the laws of the State of Connecticut, who cannot remain substance free, who cannot benefit from rehabilitative programs, and who cannot set appropriate limits as a parent. She has admitted to DCF that she cannot parent Cody. When her daughters were returned to her in the past, she did not take Cody, opting leaving him in foster care instead. It does not benefit Cody or the people of the State of Connecticut to place him into an environment where he obviously will not be provided with the structure and guidance that he so desperately needed in order to have any chance of growing up to be a successful adult and contributing member of society.
Georges Santayana, the twentieth century philosopher, writer and poet, once wrote that, "Those who cannot remember the past are condemned to repeat it." One need only to look at the situation with Lisa's daughters, Sheena, Jessica and Melissa, to see what would happen to Cody should he be returned to her care.
Our courts have recognized that "long-term stability is critical to a child's future health and development." In re Eden F., supra,250 Conn. 709. Furthermore, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." when resolving issues related to the permanent or temporary care of neglected children. In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992); see also In re Juvenile Appeal (84-CD), 189 Conn. 276, 292, 455 A.2d 1313 (1983).
It is not in Cody's best interests to allow him to languish in foster care, awaiting Lisa's development of an adequate parenting capacity and control over substance abuse issues. Cody "should not be further burdened by having to wait for [his] mother to achieve the level of competency necessary" to serve as his parent. In re Amneris P., supra,66 Conn. App. 385. John has shown no interest in the matter. The court therefore concludes that this child is entitled to the benefit of ending, without further delay, the long period of uncertainty as to the availability of their biological parents as his caretakers. Severance of his legal bonds to Lisa and John, and freeing him for adoption will best eliminate the stressful limbo which persists while the TPR issues remain before this court.
The court has balanced the child's intrinsic need for stability and CT Page 601 permanency against the benefits of maintaining a legal connection with Lisa or John, and finds that the child's interests in sustained growth, development, well-being, and continuity and stability of their environment cannot be met by leaving them in foster care. In its totality, the evidence in this case clearly and convincingly militates in favor of termination of the respondents' parental rights. Pamela B. v. Ment, supra, 244 Conn. 313-314. Accordingly, with respect to the best interests of the child contemplated by § 17a-112 (j) (2), by clear and convincing evidence, and based upon all of the foregoing, including the testimony and evidence presented, the court finds that termination of the parental rights of Lisa is in the best interest of Cody; and further finds that termination of the parental rights of John is in the best interest of Cody.
IV. ORDER OF TERMINATION
WHEREFORE, after due consideration of the child's sense of time, his need for a secure and permanent environment, the relationship he has developed with his foster mother and the totality of circumstances; and having considered all the statutory criteria and having found by clear and convincing evidence that grounds exist for termination of parental rights; and having concluded that the termination of the parental rights at issue will be in the child's best interests, the court issues the following ORDERS:
That the parental rights of Lisa and John are hereby terminated as to their son Cody.
That the Commissioner of the Department of Children and Families is hereby appointed the statutory parent for Cody for the purpose of securing an adoptive family or other permanent placement for them.
That a permanency plan shall be submitted within 30 days of this judgment, and that such further reports shall be timely presented to the court, as required by law. That primary consideration for adoption of Cody shall be offered to his current foster parent(s), if appropriate.
JUDGEMENT MAY ENTER ACCORDINGLY.
TAYLOR, J.