### IN RE ALEXANDER T. ET AL.*
### (AC 23673)

Dranginis, DiPentima and Dupont, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued November 20, 2003—officially released February 24, 2004

*Marissa L. Elkins*, certified legal intern, with whom were *Paul Chill*, supervising attorney, and, on the brief, *Melanie Brookes*, *Heather Phaneuf* and *Maribeth McGloin*, certified legal interns, for the appellant (respondent mother).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

DUPONT, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights as to two of her minor children[1] after petitions to do so were filed by the petitioner, the commissioner of children and families (commissioner).[2] The respondent claims that (1) the court incorrectly ruled that the

---

[1] The parental rights of the children's fathers also were terminated. Only the respondent mother has appealed. We therefore refer to her in this opinion as the respondent.

[2] Counsel for the commissioner and for the respondent are commended for their excellent briefs and oral arguments. Counsel for the respondent were certified legal interns from the University of Connecticut School of Law legal clinic.

department of children and families had made reasonable efforts to reunify the family in accordance with General Statutes § 17a-112, (2) the court incorrectly decided that she was unable or unwilling to benefit from efforts at reunification and (3) the evidence was insufficient to support the finding that she had failed to achieve sufficient personal rehabilitation to allow her to assume a responsible position in her children's lives. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the respondent's appeal. The respondent is the mother of Alexander T. and Elijah T., born in 1994 and 1996, respectively.[3] The respondent has three other children, two older and one infant.[4] On the evening of January 20, 1999, police officers raided the apartment of the respondent's adult daughter, suspecting the daughter of illegally selling drugs. The respondent was present during the raid, and was residing at the apartment with her adult daughter and Alexander T. and Elijah T. The respondent was arrested on an outstanding warrant,[5] and her children were taken into the custody of the commissioner. At the time, the respondent had a lengthy history with the department, beginning in 1992 or 1993.

On January 22, 1999, the commissioner filed petitions alleging that Elijah T. and Alexander T. were uncared for. The court issued orders containing specific steps to assist the respondent in regaining custody of the children. Those specific steps included, inter alia, no substance abuse, no further interaction with the crimi-

---

[3] The children have different fathers. Neither father has shown any interest in his child, and neither is involved in this appeal.

[4] Only Alexander T. and Elijah T. were the subjects of the petitions for the termination of the respondent's parental rights.

[5] The respondent was arrested on charges of risk of injury to a child, possession of narcotics and failure to appear. All charges later were nolled.

nal justice system, participation in counseling and cooperation with the department.

On April 19, 1999, the respondent was arrested and charged with assault and breach of the peace.[6] On August 6, 1999, the respondent tested positive for cannabis. From April 5, 1999, until October 18, 2001, the respondent missed at least seven appointments for either counseling or drug screening. The respondent, however, successfully completed twelve hours of the pretrial drug education program at Catholic Family Services in November, 2000, and completed 100 hours of community service in 2001. She had two negative drug screens in early 2002.

On October 15, 1999, the children were adjudicated uncared for and committed to the commissioner's custody. The commitments were repeatedly extended. On January 29, 2001, the commissioner filed petitions to terminate the parental rights of the respondent. The petitions were granted by the trial court on September 23, 2002, and are the subject of the present appeal.

On September 21, 2000, Kelly F. Rogers, a psychologist, conducted an evaluation of the respondent and her children. The evaluation showed results consistent with paranoid personality disorder or possibly delusional disorder in the respondent. Rogers warned that any positive drug test should result in inpatient substance abuse treatment for the respondent, followed by residential aftercare. Rogers recommended a psychiatric evaluation as well as anger management and assertiveness training. Additional facts will be set forth as necessary.

## I

We will address the first two claims of the respondent together. The respondent claims that the trial court

---

[6] The respondent received probation and a suspended one year sentence on conviction of the charges.

improperly ruled that the department's efforts at reunification were reasonable by clear and convincing evidence, and that she was unwilling or unable to benefit from those efforts. General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to . . . reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . ." Section 17-112 (j) makes clear that the court must make a finding based on clear and convincing evidence that the department made reasonable efforts at reunification or, in the alternative, make a finding that the parent is unwilling or unable to benefit from reunification efforts. The trial court decided both issues. An analysis of the relevant facts is needed to determine whether the department made reasonable efforts to reunify the respondent with her children. A parallel analysis of the respondent's response to those efforts is necessary to determine how able or willing she was to benefit from those efforts. Those findings are fact based.

Our standard of review is limited. We analyze the trial court's decision in light of the evidence in the entire record to determine whether the decision was clearly erroneous. *In re Luis C.*, 210 Conn. 157, 166, 554 A.2d 722 (1989). We make every reasonable presumption in favor of the court's decision. *In re Charles A.*, 55 Conn. App. 293, 297, 738 A.2d 722 (1999).

The interest of parents in raising their children, and in their children in general, is a fundamental right. That right warrants deference and protection. *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). Termination of parental rights does not follow

automatically from parental conduct that might justify the removal of a child from the natural parental home. See *In re Baby Girl B.*, 224 Conn. 263, 293, 618 A.2d 1 (1992). While observing the proper deference for the parent-child relationship, we note that the department must make a *reasonable* effort at reunification, not every *possible* effort. *In re Ebony H.*, 68 Conn. App. 342, 349, 789 A.2d 1158 (2002).

In the case of *In re Ebony H.*, the respondent, in circumstances somewhat similar to those of the respondent in this case, received shoddy service from the department in response to her request for a housing referral following a successful completion of a substance abuse program.[7] Nine days later, the respondent was again using cocaine. This court held that reasonable efforts to reunify were made despite the failure of the department to assist with housing. Id., 349–50. Despite the department's "shameful and unacceptable"; id., 350; conduct, the court held that the efforts of the department to reunify the family were reasonable. Id.

The respondent in this case alleges failure on the part of the department to make reasonable efforts to reunify her family. She contends that the failure of the department to provide a referral for a psychiatric examination following Rogers' report amounts to a failure to make a reasonable effort at reunification. In light of the entire record, the failure to provide the referral, while a lapse, does not make the overall efforts of the department fall below the level of what is reasonable. In addition, the efforts of the department were reasonable in light of the respondent's conduct.

There were ten reports since 1992 that the respondent had neglected her children. Six were substantiated. On

[7] The court described the response of the department to the respondent's request for assistance as "shameful and far beneath any acceptable level of professional conduct . . . ." (Internal quotation marks omitted.) *In re Ebony H.*, supra, 68 Conn. App. 347.

April 5, 1999, the department referred the respondent for drug screening and evaluation. She failed to attend. The respondent subsequently was arrested on April 19, 1999, and charged with assault. On June 2, 1999, the department referred the respondent to Catholic Family Services for counseling. Once again, she did not attend. Starting in July, 1999, the respondent failed to visit her children for nine months. On August 6, 1999, the respondent tested positive for cannabis in a rare instance in which she responded to requests for testing. In mid-2001, the respondent was incarcerated in the York Correctional Institution in Niantic and failed to participate in rehabilitation efforts while incarcerated. At the time of trial, the respondent was living with a man who was on probation for the crimes of reckless burning and threatening.

The respondent submitted an extensive appendix, some of which shows the positive steps that she took in furtherance of her efforts at rehabilitation and reunification. That same appendix shows that she arrived late for supervised visits, that she failed to cooperate with the department, and concerns from those responsible for the treatment of Elijah T. and Alexander T. that her visits with the children were doing more harm than good.[8]

The court's memorandum of decision reflects the efforts on the part of the department to reunify the

---

[8] We are mindful that the best interest of a child is not the primary focus when determining whether to grant a petition to terminate parental rights. *In re Valerie D.*, 223 Conn. 492, 511, 613 A.2d 748 (1992). The determination of a child's best interest arises only after a statutory ground for the termination of parental rights has been established. Id. The respondent's and the petitioner's appendices, however, reveal that concern over the best interests of the children was the focus of the children's therapists when they wrote letters to the department recommending a decrease in supervised visits. Although the trial court cannot use those facts to find grounds for termination, concern for the children is an additional, not an alternative, requirement for the termination of parental rights. Id., 511 n.15. The children's best interests here are relevant to our discussion.

respondent with her children, which rose, by clear and convincing evidence, to the level of reasonable efforts as set forth in *In re Ebony H.*, supra, 68 Conn. App. 349. Those same facts demonstrate a corresponding lack of will or ability on the part of the respondent to cooperate with such efforts.

The respondent further alleges that the department's decision to cut off contact between her and her children showed a lack of reasonable effort to reunify the family. The decision to cut off contact can be inferred as one made in light of all the relevant circumstances. During one period of time, the respondent did not visit her children for nine months. Although the respondent alleged hostility toward her at the home in which the children were placed during that nonvisiting period, that cannot justify her total lack of effort to visit or her failure to avail herself of the department or the courts to enforce her visitation rights.[9]

On October 15, 1999, the respondent and the department both signed the "specific steps" that the respondent would have to take to regain custody of her children. Among them was the respondent's authorization by signing releases to allow the department to communicate with service providers to monitor her attendance, cooperation and progress toward identified goals. Another was that the respondent must visit her children as often as permitted. She also was to abstain from substance abuse and to have no involvement with the criminal justice system. Two letters from Kareem A. Muhammad, a social worker, reflect either the respondent's unwillingness to sign releases or her

[9] During the period in which the respondent did not visit her children, they were placed temporarily with her sister. The record reflects a mistake on the part of the department in that placement. The children were physically abused while in the sister's care. That fact does not, however, reflect a lack of reasonable effort on the part of the department to reunify the respondent and her children.

inability to stay in contact after she had signed the court's orders containing the specific steps and then failed on two occasions to appear for drug screening and evaluation.

Finally, the respondent claims that the court could not make a finding that she was unable or unwilling to benefit from reunification efforts without the benefit of expert testimony. Expert testimony is necessary when the subject in question is beyond the field of ordinary knowledge and experience for a judge. *LePage* v. *Horne*, 262 Conn. 116, 125, 809 A.2d 505 (2002). The respondent alleged that the court found that she was unable or unwilling to benefit from reunification efforts on the basis of speculation that she would not attend a meeting after a referral to a psychiatrist. The court, in its memorandum of decision, referred to the respondent's "track record" over five years of involvement with the department. Expert testimony is not required to examine the respondent's history with the department and the trouble she has experienced in achieving rehabilitation to determine that the respondent was unable or unwilling to benefit from the efforts of the department.

As outlined by the court, clear and convincing evidence existed showing that the department had made reasonable efforts to reunify the respondent with the children. The respondent's subsequent failure to take advantage of those efforts establish her inability or unwillingness to benefit from those reasonable efforts, also by clear and convincing evidence.

II

The respondent next claims that the evidence was insufficient to support the court's decision that she had failed to achieve a sufficient degree of rehabilitation and that the court's resulting decision to terminate her

parental rights in accordance with § 17a-112 (j) (3) (B) (ii)[10] was incorrect. We disagree.

When considering a challenge to the sufficiency of the evidence, the function of an appellate court is to review the findings of the trial court, not to retry the case. *In re Quanitra M.*, 60 Conn. App. 96, 105–106, 758 A.2d 863, cert. denied, 255 Conn. 903, 762 A.2d 909 (2000). "A court's determination that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Amneris P.*, 66 Conn. App. 377, 384, 784 A.2d 457 (2001).

It is important to note at the outset of our analysis that in considering the evidence, we do not necessarily analyze the claim in terms of what is best for the children. Specific statutory standards necessary for termination must be met to justify termination. Consideration of the best interest of the child comes after a determination that termination is warranted. See footnote 8. What this court does analyze is whether it was clear error to determine that the evidence was clear and convincing and therefore sufficient to justify a finding that the respondent had failed to achieve sufficient personal rehabilitation so that termination of her parental rights was necessary pursuant to § 17a-112 (j) (3) (B) (ii). Our analysis concerns the statutory provisions of § 17a-112

[10] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) . . . (B) the child . . . (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

(j) and whether there was justification for termination by clear and convincing evidence.

The statute requires the court to analyze the respondent's rehabilitative status as it relates to the needs of the particular children. *In re Eden F.*, 250 Conn. 674, 706, 741 A.2d 873 (1999). The critical distinction to be made is not whether the respondent has shown some improvement in her ability to manage her life, but whether she has shown some improvement in her ability to provide adequate care for the particular children in question. *In re Amneris P.*, supra, 66 Conn. App. 385.

The court considered the respondent's history, including positive and negative aspects, before making its decision. The court considered the improvements that the respondent had made and the testimony of the various expert and lay witnesses, and it had a large amount of information available to it before rendering its decision, including the fact that the respondent had custody of and was caring for another child at that time. We cannot say that the evidence was insufficient.

The respondent argues that termination would not have taken place had she not been arrested on a prior warrant as a result of the drug raid on her daughter's apartment and her children placed in the commissioner's custody because of the respondent's temporary incarceration on charges that later were nolled. See footnote 5. We do not dispute that she was arrested and discharged from custody on those charges. Essentially, the respondent argues that the department should have placed great weight on those facts and ignored warning signs of neglect and her sad history in caring for her children, and returned the children to a potentially unsafe situation. The termination of her parental rights was not the result of an initial removal of the children from her care that "snowballed" into a termination, as the respondent suggests. Rather, it was the result of

reasonable efforts by the department at reunification that met with the respondent's failure to show an ability or willingness to achieve a sufficient degree of personal rehabilitation to allow her to assume a responsible position in her children's lives.

The foregoing facts as found by the court and discussed in its memorandum of decision established by clear and convincing evidence that the department made reasonable attempts at reunification and that the respondent was unwilling or unable to benefit from those efforts due to her failure to achieve a sufficient degree of personal rehabilitation. The evidence was sufficient to terminate her parental rights.

The judgments are affirmed.

In this opinion the other judges concurred.